NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| NUGENERATION TECHNOLOGIES, LLC, <br><br> Plaintiff, <br><br> v. <br><br> SHOEB MOIYADI, ECOLINK, INC., & BRANDON PELISSERO, <br><br> Defendants. | Civil Action No. 23-459 (RK) (TJB) <br><br> **MEMORANDUM OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon two motions to dismiss filed by Defendants Shoeb Moiyadi ("Moiyadi"), Ecolink, Inc. ("Ecolink"), and Brandon Pelissero ("Pelissero"). Moiyadi seeks dismissal based on lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 18.) Plaintiff NuGeneration Technologies, LLC ("NuGenTec") filed a brief opposing dismissal (ECF No. 20), and Moiyadi filed a reply brief (ECF No. 23). Ecolink and Pelissero also seek dismissal based on lack of personal jurisdiction and improper venue, and in the alternative seek transfer to the Northern District of California pursuant to 28 U.S.C. § 1404. (ECF No. 19.) Plaintiff filed a brief in opposition (ECF No. 21), and Ecolink and Pelissero filed a reply brief. (ECF No. 24.)

The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendants' motions to dismiss for lack of personal jurisdiction are **DENIED** without prejudice, and the parties are ordered to conduct limited jurisdictional discovery.

1

I.   **BACKGROUND**

In this litigation, a California company alleges that its former consultant and distributor committed corporate espionage and client sabotage related to sales of the company's proprietary chemical solvent.

Plaintiff is a Delaware-registered limited liability company with its principal place of business in Emeryville, California. (Compl. ¶ 1, ECF No. 1.) Donato Polignone ("Polignone") is Plaintiff's sole member. (*Id.* ¶ 2.) Plaintiff manufactures and distributes chemical solvents, including a line of fluorinated solvents sold under the brand name FluoSolv. (*Id.* ¶¶ 8, 9.)

Pursuant to a February 2013 "Consultant Agreement" between Plaintiff and Defendant Shoeb Moiyadi ("Moiyadi") appended to the Complaint, Moiyadi and Polignone jointly developed and co-owned the FluoSolv brand. (Compl. Ex. B, ECF No. 1-3 at 1.) Moiyadi resides in San Jose, California. (*Id.* ¶ 3.) Beginning in 2013, Moiyadi served as Plaintiff's technology consultant, in which role he assisted Plaintiff with product development, technical support, and production engineering. (*Id.* ¶¶ 11, 16.) Plaintiff alleges that Moiyadi's responsibilities also included "purchasing and blending raw materials into finished FluoSolv products," "selling finished FluoSolv products to third party distributors," and interacting with Plaintiff's customers. (*Id.* ¶¶ 17, 27.) Plaintiff terminated Moiyadi's Consultant Agreement via letter dated January 5, 2023. (Compl. Ex. F, ECF No. 1-7.)

Defendant Ecolink, Inc. ("Ecolink") is a company with its principal place of business in and created under the laws of Georgia. (Compl. ¶ 4.) Defendant Branon Pelissero ("Pelissero") is Ecolink's Chief Executive Officer and resides in Decatur, Georgia. (*Id.* ¶ 7.) Ecolink served as a "third-party" "middleman" for Plaintiff, distributing Plaintiff's FluoSolv products "nationwide" in

2

North America, including to New Jersey customers. (*Id.* ¶¶ 18, 19, 22–24.) Ecolink also produces and markets its own chemicals to customers. (*Id.* ¶¶ 25–26.)

Plaintiff alleges that beginning around March 2022, Moiyadi and Pelissero informed Plaintiff's customers that raw materials shortages had caused FluoSolv products to become unavailable. (*Id.* ¶ 27.) Plaintiff claims that Defendants fabricated these shortages to undermine the customers' reliance on FluoSolv and Plaintiff. (*Id.* ¶¶ 28–30, 40.) In FluoSolv's place, Defendants allegedly offered Plaintiff's customers a new line of Ecolink's own fluorinated solvents, which they sold under the brand name "Lss Chemicals." (*Id.* ¶¶ 32, 34–39.) Per the Complaint, the products sold by "Lss Chemicals" were developed based on Plaintiff's confidential chemical formulas that Moiyadi had access to (*id.* ¶¶ 47–48) and were marketed and sold relying on Defendants' access to Plaintiff's "secret customer lists and trade information" (*id.* ¶¶ 47, 49).

On January 26, 2023, Plaintiff filed suit in this District alleging misappropriation of trade secrets in violation of 18 U.S.C. §§ 1831–1839 (*id.* ¶¶ 60–85) and N.J.S.A. §§ 56:15-1–9 (*Id.* ¶¶ 86–99), as well as common law claims for tortious interference with business relations and prospective economic advantage (*id.* ¶¶ 100–14), conversion (*id.* ¶¶ 115–27), and civil conspiracy (*id.* ¶¶ 128–35). On April 6, 2023, Moiyadi filed a motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). (ECF No. 18.) Ecolink and Pelissero concurrently moved to dismiss for lack of personal jurisdiction under Rule 12(b)(2) and improper venue under Rule 12(b)(3) and 28 U.S.C. § 1391(b). (ECF No. 19-1.) In the alternative, Ecolink and Pelissero sought transfer to the Northern District of California. (ECF No. 19-1.) With his moving brief, Pelissero submitted a sworn declaration. (ECF No. 19-2 ("Pelissero Decl.").) Plaintiff filed briefs opposing both motions (ECF Nos. 20, 21) and submitted a sworn declaration from Polignone in support of its opposition (ECF No. 22 ("Polignone Decl.")). Defendants filed

3

separate reply briefs. (ECF Nos. 23, 24.) In support of his reply brief, Moiyadi filed his own sworn declaration. (ECF No. 23-1 ("Moiyadi Decl.").)

With respect to Moiyadi, Polignone avers that Plaintiff served multiple customers in New Jersey, including Kearfott Corp.; Sensor Scientific, Inc.; Thorlabs, Inc.; AST Bearings, LLC; Electro-Miniatures Corp.; Synergy Microwave Corp.; and VWR International, LLC. (Polignone Decl. ¶¶ 5, 10.) Moiyadi "would have been aware" of these customers, "communicated with some or all" of them regarding FluoSolv, and "developed relationships" with them. (*Id.* ¶¶ 5–7, 10.) Moiyadi allegedly "communicated with Kearfott's New Jersey location regarding FluoSolv" and "traveled to New Jersey for FluoSolv-related" work. (*Id.* ¶¶ 8–9.) On September 20, 2021, Moiyadi visited Kearfott and AST Bearings at their New Jersey locations to meet about FluoSolv. (*Id.* ¶ 14.) Because "[i]t was Moiyadi's job to maintain relationships with these and other customers," Polignone believes Moiyadi "would have continued communicating with Kearfott and AST Bearings employees in New Jersey about FluoSolv until his termination." (*Id.* ¶ 18.)

With respect to Ecolink and Pelissero, Plaintiff alleges that it hired Ecolink to ship FluoSolv products to Kearfott and its other New Jersey customers, which Ecolink did. (*Id.* ¶¶ 22, 24, 26.) Polignone avers that Pelissero "would have been aware of NuGenTec's New Jersey customers," including Kearfott and AST Bearings. (*Id.* ¶¶ 21, 23.) Polignone asserts that Pelissero communicated with Kearfott's New Jersey location regarding FluoSolv. (*Id.* ¶ 25.) Polignone also alleges "on information and belief" that Pelissero communicated with Kearfott's New Jersey location and other of NuGenTec's New Jersey customers regarding LLS Chemical solvents. (*Id.* ¶¶ 27–28.)

Appended to the Complaint is an email chain among employees of Kearfott, one of Plaintiff's customers with a New Jersey presence. (Compl. Ex. E, ECF No. 1-6.) The email

4

includes the words "FluoSolv (discontinued)" in the subject line, mentions "replacement material from Ecolink" in the body of one email, and includes a discussion among Kearfott employees of the effectiveness of the replacement solvent. (*Id.*) The email discusses the effectiveness of solvents called "F3" and "N3," (*id.*), which Plaintiff contends are the names of Defendants' solvents developed through Lss Chemicals (Compl. ¶¶ 40–44). One Kearfott employee wrote that he would forward the email chain to the "Ecolink team (Brandon & Shoeb)," and then forwarded the email chain to the email addresses brandon@ecolink.com, smoiyadi@nugentec.com, and smoiyadi@gmail.com on January 9, 2023. (Compl. Ex. E, ECF No. 1-6.)

## II.   **LEGAL STANDARD**

Rule 12(b)(2) permits a party to move to dismiss a case for "lack of personal jurisdiction." Fed. R. Civ. P. 12(b)(2). On a motion to dismiss, the plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Once a defendant raises a jurisdictional defense, the "plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper." *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Such competent evidence may include sworn affidavits, *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984), but may not include a mere "unverified complaint," *Markferding v. Westmoreland Cnty. (Pa.) Domestic Rels. Off.*, No. 05-755, 2005 WL 1683744, at *3 (D.N.J. June 17, 2005), or bare assertions made "upon information and belief." *Victory Int'l (USA) Inc. v. Perry Ellis Int'l, Inc.*, No. 07-375, 2008 WL 65177, at *6 (D.N.J. Jan. 2, 2008) (citing *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997)). In short, the plaintiff must offer "actual proofs, not mere allegations." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 603–04 (3d Cir. 1990) (quoting *Time Share Vacation Club*, 735 F.2d at 67 n. 9). The Court must construe all

disputed facts in the plaintiff's favor. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

To meet its burden of establishing personal jurisdiction, a plaintiff may show the defendant's "continuous and systematic" contacts with the forum state such that the Court can exercise general jurisdiction over the plaintiff. *See International Shoe Co. v. Washington*, 326 U.S. 310, 318 (1945). Alternatively, the plaintiff may allege that a defendant has sufficient minimum contacts with a state to create specific jurisdiction, accomplished by "establish[ing] with reasonable particularity" three elements. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129–30 (3d Cir. 2020) (quoting *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987)). First, the defendant must have "'purposefully directed [its] activities' at the forum." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Second, the plaintiff's claims must "arise out of or relate to" the defendant's contacts with the forum. *Id.* (quoting *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Third, the exercise of personal jurisdiction must not "offend traditional notions of fair play and substantial justice." *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

When jurisdiction is lacking, the Court may permit jurisdictional discovery "[i]f a plaintiff presents factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state . . . ." *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003) (internal citations and quotations omitted). Even after denying a motion to dismiss for lack of personal jurisdiction, a court "may always revisit the issue of personal jurisdiction if later revelations reveal that the facts alleged in support of jurisdiction remain in

dispute." *Otsuka Pharm. Co. v. Mylan Inc.*, 106 F. Supp. 3d 456, 462 n.5 (D.N.J. 2015) (citing *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 331 (3d Cir. 2009)).

## III. DISCUSSION

Plaintiff's allegations do not establish that the Court can exercise personal jurisdiction over Moiyadi, Ecolink, or Pelissero. However, Plaintiff's evidence and arguments are not so speculative as to require outright dismissal. Rather, for the reasons given below, the Court will deny Defendants' motions without prejudice and permit limited jurisdictional discovery into Defendants' contacts with Plaintiff's New Jersey customers.

The Court considers whether Defendants are subject to personal jurisdiction by applying the traditional minimum contacts analysis.[1]

### A. PURPOSEFUL AVAILMENT

First, the plaintiff must show that the defendant directed its activities at the New Jersey forum and purposefully availed itself of its benefits. *See O'Connor*, 496 F.3d at 317. The defendant must "deliberately reach[] out beyond its home — by, for example, exploiting a market in the

---

[1] Plaintiff has waived argument that the Court can exercise general jurisdiction over any Defendant by failing to raise it. *See Am. Bus. Lending Grp., Inc. v. Shainis*, No. 10-2420, 2011 WL 691580, at *8 (D.N.J. Feb. 14, 2011) ("Plaintiff does not claim there is a basis for general jurisdiction and appears to waive this argument."). In any event, Defendants have not maintained "continuous and systematic contacts" with New Jersey such that they are "essentially at home" here. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (citations omitted). Moiyadi and Pelissero are subject to general jurisdiction in their home states of California and Georgia, respectively. (Compl. ¶¶ 3, 7.) Ecolink is at home in Georgia, where it is incorporated and its principal place of business is. (Compl. ¶ 4.).

Plaintiff also does not argue that specific jurisdiction exists under the *Calder* effects test, under which "an intentional tort directed at the plaintiff and having sufficient impact upon it in the forum may suffice to enhance otherwise insufficient contacts with the forum such that the 'minimum contacts' prong of the Due Process test is satisfied." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 260 (3d Cir. 1998) (discussing *Calder v. Jones*, 465 U.S. 783 (1984)). However, the *Calder* test requires Plaintiff to establish that it "felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort." *Id.* at 265–66. Plaintiff, a California company with nationwide operations and only seven New Jersey customers, has not established that it felt the brunt of the harm in New Jersey.

forum State or entering a contractual relationship centered there." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (cleaned up) (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014)). "Each defendant's contacts with the forum state must be assessed individually." *Nicholas v. Saul Stone & Co.*, 224 F.3d 179, 184 (3d Cir. 2000). The Court considers Moiyadi's contacts with New Jersey before considering those of Ecolink and Pelissero.

Plaintiff alleges that Moiyadi's job responsibilities as Plaintiff's contractor included "purchasing and blending raw materials into finished FluoSolv products" and "selling finished FluoSolv products to third party distributors," such as Ecolink. (Compl. ¶ 17.) During Moiyadi's tenure, Plaintiff claims it had seven FluoSolv customers in New Jersey, including Kearfott Corporation and AST Bearings, LLC. (Polignone Decl. ¶¶ 5–7, 10.) Per Plaintiff, Moiyadi's duties as Plaintiff's consultant "would have included maintaining relationships with FluoSolv customers," including at least Kearfott and AST Bearings. (*Id.* ¶ 5–7, 10.) Plaintiff alleges, and Moiyadi agrees, that on September 20, 2021, Moiyadi met with Kearfott and AST Bearings employees at their New Jersey locations about FluoSolv. (*Id.* ¶ 14.) Moiyadi agrees that he communicated with Plaintiff's customers, including Kearfott's New Jersey location, and visited the New Jersey facility in 2021. (Moiyadi Decl. ¶¶ 17–21.) Moiyadi frames Plaintiff's arguments as hinging on the argument that Ecolink's contacts with New Jersey can be attributed to Moiyadi through the "conspiracy theory of jurisdiction," which Moiyadi argues is an invalid basis to assert personal jurisdiction. (ECF No. 23 at 4 ("[A]lleged acts of [the co-Defendants] cannot be imputed to Moiyadi for jurisdiction as a matter of law.").)

Plaintiff's allegations are sufficient to establish that Moiyadi purposefully availed himself of the New Jersey forum. Plaintiff adequately alleges that Moiyadi, as Plaintiff's contractor, targeted Plaintiff's customers in New Jersey, shipped products to distributors for delivery to

customers in New Jersey, and travelled once to New Jersey to meet with Plaintiff's customers. While Moiyadi does not agree to the extent of his contacts with the New Jersey customers, he notably acknowledges his relationship with Plaintiff's New Jersey customers in 2021 and 2022. (Moiyadi Decl. ¶¶ 17–21.) These alleged contacts are sufficient to show "a deliberate targeting of the forum," *D'Jamoos ex rel. Est. of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 103 (3d Cir. 2009) (quoting *O'Connor*, 496 F.3d at 317)), and are distinguishable from the sort of "random, isolated, or fortuitous" contacts with the forum that do not meet this standard. *Ford Motor Co.*, 141 S. Ct. at 1026 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984)). The Court does not agree with Moiyadi that Plaintiff's jurisdictional argument hinges on Ecolink's contacts with New Jersey and finds that standing alone, Moiyadi's contacts are sufficient to establish purposeful availment.

    With respect to Ecolink and Pelissero, Plaintiff argues that Pelissero was Ecolink's go-between with Plaintiff and Plaintiff's New Jersey customers. (ECF No. 21 at 6.) As Ecolink's CEO, Pelissero "would have been aware of NuGenTec's New Jersey customers," including Kearfott and AST Bearings." (Polignone Decl. ¶¶ 21, 23.) Polignone avers that Plaintiff hired Ecolink to ship FluoSolv products to Kearfott and other customers in New Jersey, and that Ecolink delivered FluoSolv products to New Jersey for Plaintiff. (*Id.* ¶¶ 22, 24, 26.) Pelissero communicated with Kearfott's New Jersey location regarding FluoSolv. (*Id.* ¶ 25.) Ecolink disclaims significant contacts with New Jersey, arguing that only 1.3% of its revenue came from New Jersey customers in 2022; that it expects no revenue from FluoSolv customers in New Jersey in 2023; that none of its employees reside in New Jersey; and that Ecolink has "never targeted its marketing at New Jersey specifically." (ECF No. 24 at 2–3.) Ecolink also argues that the fact that it is registered to do business in New Jersey is irrelevant to the specific jurisdiction analysis. (ECF

No. 19-1 at 3–5.) Pelissero additionally argues that Ecolink's New Jersey contacts cannot be imputed to Pelissero individually. (*Id.* at 5–6.)

The Court finds that Plaintiff has made out a *prima facie* case that the Court can exercise personal jurisdiction over Ecolink, but not over Pelissero. Plaintiff alleges that Ecolink shipped products to customers in New Jersey. This is sufficient to show "a deliberate targeting of the forum," *D'Jamoos*, 566 F.3d at 103 (quoting *O'Connor*, 496 F.3d at 317), especially because Ecolink does not dispute that they had *some* business contacts with Plaintiff's New Jersey customers in 2021 and 2022. Pelissero admits that Ecolink directly serviced New Jersey customers, including through their FluoSolv sales. (Pelissero Decl. ¶ 10 ("In the year 2021, the total revenue associated with Ecolink's business operations that derived from New Jersey customers was 2.5%.").) Pelissero notes that "many" of Ecolink's interactions with its New Jersey-based customers were directed to locations outside of New Jersey (*id.* ¶ 13), which indicates that Ecolink sold FluoSolv to at least some of its New Jersey customers at their New Jersey locations.

Ecolink's other attempts to distance itself from New Jersey are unavailing. Ecolink argues that the fraction of its sales coming from New Jersey — 2.5% in 2021 and 1.3% in 2022 — were too small to establish minimum contacts. (ECF No. 24 at 2; Pelissero Decl. ¶¶ 10–11.) However, the dollar amount of a defendant's sales is not "dispositive on the issue of whether a party has engaged in 'continuous and systematic' activity that would subject a party to personal jurisdiction." *Helicopteros Nacionales*, 466 U.S. at 416; *see also Gourmet Video, Inc. v. Alpha Blue Archives, Inc.*, No. 08-2158, 2008 WL 4755350, at *6 (D.N.J. Oct. 29, 2008) (finding sufficient minimum contacts despite defendants' estimate that less than two percent of their sales occurred in New Jersey). Ecolink emphasizes that no Ecolink employee was based in New Jersey during the relevant period. (Pelissero Decl. ¶¶ 6–7, 20.) However, "[t]he defendant need not be

physically located in the state while committing the jurisdiction-creating acts." *Carrabba v. Morgat*, No. 12-6342, 2014 WL 229280, at *3 (D.N.J. Jan. 17, 2014). Pelissero admits that Ecolink shipped products to its New Jersey customers, whose relationship with Ecolink is central to Plaintiff's allegations.

However, with respect to Pelissero, Plaintiff has not sufficiently alleged purposeful availment. Plaintiff argues that Pelissero is subject to the Court's jurisdiction to the same extent as Ecolink because Pelissero took the jurisdiction-creating actions on Ecolink's behalf. (ECF No. 22 at 15.) It is true that alleged tortious actions Pelissero took personally in his capacity as Ecolink's CEO are attributed as Pelissero's own New Jersey contacts. *See Collins v. James W. Turner Constr., Ltd*, No. 16-2877, 2017 WL 210236, at *8 (D.N.J. Jan. 18, 2017) ("[A]ctions taken by a defendant in his or her 'corporate capacity' may only be used to establish personal jurisdiction over the defendant where those actions tend to establish individual liability."). However, Plaintiff's allegations that Ecolink distributed FluoSolv products to their New Jersey customers do not make clear what role Pelissero — distinct from Ecolink — played in interacting with and shipping to Ecolink's New Jersey customers, such that the Court may conclude that Ecolink's contacts with Plaintiff's New Jersey customers are Pelissero's as well.

### B.   RELATIONSHIP TO THE DISPUTE

To establish specific jurisdiction, Plaintiff's claims must "arise out of or relate to" Defendants' contacts with New Jersey. *O'Connor*, 496 F.3d at 318 (citing *Helicopteros*, 466 U.S. at 414). This second element requires "a strong 'relationship among the defendant, the forum, and the litigation.'" *Hepp v. Facebook*, 14 F.4th 204, 208 (3d Cir. 2021) (quoting *Ford Motor Co.*, 141 S. Ct. at 1026). However, the element is not so demanding that "only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford Motor Co.*,

11

141 S. Ct. at 1026 (quoting *Daimler*, 571 U.S., at 127). The "relate to" language of the element "contemplates that some relationships will support jurisdiction without a causal showing." *Id.*

To establish the necessary connection between Defendants' 2021 and 2022 contacts with Plaintiff's New Jersey customers and the instant suit, Plaintiff relies on the January 2023 email chain among Kearfott employees. (ECF No. 20 at 10–11.) This email chain includes the words "FluoSolv (discontinued)" in the subject line, mentions "replacement material from Ecolink," and was forwarded to email addresses purportedly belonging to Moiyadi and Pelissero. (*Id.* (citing Compl. Ex. E, ECF No. 1-6).) Plaintiff argues that this email reflects Defendants' misrepresentation to Kearfott that FluoSolv was discontinued and their offer to supplant FluoSolv with their own "replacement" solvent. (Compl. ¶¶ 44, 49.) Plaintiff extrapolates from this email to argue that "Moiyadi, Pelissero, and Ecolink have had similar conversations with and made similar misrepresentations to NuGenTec's other customers, both in New Jersey and nationwide." (Compl. ¶¶ 40, 45.) Defendants disagree, arguing that whatever modest New Jersey contacts they have are unrelated to the wrongdoing alleged in Plaintiff's Complaint. (ECF Nos. 23 at 2; 24 at 4.) Defendants contest the significance of the January 2023 Kearfott email chain and whether it can connect their business ties to New Jersey from 2021 and 2022 to the instant claims. (ECF Nos. 23 at 3; 24 at 4–5.)

At this juncture, Plaintiff has not carried its burden to sufficiently tie Defendants' contacts to Plaintiff's New Jersey customers to the instant dispute. Plaintiff lacks sufficiently concrete evidence that Defendants abused their relationships with Plaintiff's New Jersey customers to undercut FluoSolv and sell their competing product. Plaintiff alleges generally that Moiyadi "communicated with some or all of NuGenTec's New Jersey customers" and that "[o]n information and belief, Moiyadi has communicated with Kearfott's New Jersey location regarding

LSS Chemicals solvents," the competing product Plaintiff alleges Defendants developed and sold using Plaintiff's proprietary information. (Moiyadi Decl. ¶¶ 7, 17.) With respect to Pelissero and Ecolink, Plaintiff alleges "on information and belief" that Pelissero communicated with Kearfott's New Jersey location and other of NuGenTec's New Jersey customers regarding LLS Chemical solvents. (Moiyadi Decl. ¶¶ 27–28.) However, a statement made "on information and belief" is generally insufficient to support personal jurisdiction once challenged. *Victory Int'l (USA) Inc.*, 2008 WL 65177, at *6.

The January 2023 email chain does not itself create the jurisdictional ties Plaintiff must show. Defendants correctly note that the email is unclear where the Kearfott employees were located. (*See generally* Compl. Ex. E, ECF No. 1-6.) If the Kearfott employees do not work for Kearfott's New Jersey office, then, even assuming the email reflects Defendants' attempt to steal Plaintiff's customers, it does not show a sufficiently "strong relationship among the defendant, the forum, and the litigation." *Hepp*, 14 F.4th at 208 (citations omitted); *see also Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F. Supp. 2d 629, 635 (D.N.J. 2004) ("Defendant's relationship with Swift is not a 'contact' with New Jersey, since Defendant only does business with Swift's Illinois headquarters and has no relationship with its New Jersey subsidiary."). The email's jurisdictional weight is also muted because, although it hints that the discussions about Kearfott using a FluoSolv replacement was prompted by Defendants, the exhibit does not show whether Defendants ever responded to the email chain forwarded to them. *See Serv. Experts LLC v. Baxter*, No. 21-18281, 2023 WL 3452330, at *4 (D.N.J. May 15, 2023) ("We do not see how emails sent and received outside of New Jersey are relevant to a minimum contacts analysis with New Jersey.").[2]

---

[2] Because Plaintiff has not met the first two elements of the test, the Court need not consider the third element, whether exercise of specific jurisdiction over Defendants would comport with fair play and substantial justice. *D'Jamoos*, 566 F.3d at 106 ("Because we conclude that appellants fail to establish that

### C.  JURISDICTIONAL DISCOVERY

Although the Court finds Plaintiff has not met its burden to establish personal jurisdiction, Plaintiff requests that even if the Court finds it did not make a *prima facie* showing of jurisdiction over Defendants, the Court should order jurisdictional discovery. (ECF No. 21 at 17 (citing *Toys 'R' Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003)).)

The Court concludes that Plaintiff has "present[ed] factual allegations that suggest with reasonable particularity the possible existence of the requisite contacts" between Moiyadi and New Jersey. *Toys "R" Us*, 318 F.3d at 456 (internal quotation marks omitted) (quoting *Mellon Bank (E.) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)). The competent evidence in Plaintiff's verified Complaint, its exhibits, and Plaintiff's sworn declaration raise the possibility of jurisdiction beyond mere speculation and sufficiently suggest that the wrongdoing Plaintiff alleges arises in part from Defendants' New Jersey contacts. Plaintiff claims that Defendants exploited their relationships with Plaintiff's customers — built through delivering products to the New Jersey customers for Plaintiff in 2021 and 2022 — to sell a competing solvent. Plaintiff's claims are directly tied to Moiyadi's and Ecolink's previous relationships with Plaintiff's customers. At this juncture, the Court cannot accept Defendants' invitation to conclude that the January 2023 Kearfott email chain is irrelevant to the jurisdictional analysis. The January 2023 email chain among Kearfott employees includes the words "FluoSolv (discontinued)" in the subject line and mentions "replacement material from Ecolink," and was forwarded to the "Ecolink team (Brandon & Shoeb)." (ECF No. 1-6.)[3] Perhaps this email, as Defendants vigorously argue,

---

Pilatus had the required minimum contacts within Pennsylvania, we do not consider . . . the third prong of a specific jurisdiction analysis.").

[3] While Moiyadi claims to never have received that email and that there is no evidence the call ever occurred (ECF No. 23 at 3), the email address includes not just an @nugentec.com address for Moiyadi but also what appears to be a private email address, smoiyadi@gmail.com. (ECF No. 1-6.)

14

has an innocent explanation and does not evidence the nefarious purpose Plaintiff assigns it. The email, combined with Plaintiff's other evidence, carries his assertions beyond "bare legal conclusions or vague generalizations" that would permit dismissal without further inquiry. *McClung v. 3M Company*, No. 16-2301, 2019 WL 4668053, at *4 (D.N.J. Sept. 25, 2019).

Because the Complaint presents non-frivolous allegations that may establish personal jurisdiction over Defendants if borne out, the Court will order limited jurisdictional discovery. *See Efofex, Inc. v. Realhub Inc.*, No. 21-8454, 2022 WL 2718138, at *2–3 (D.N.J. July 13, 2022); *Logic Tech. Dev. LLC v. Levy*, No. 17-4630, 2018 WL 3405262, at *3 (D.N.J. July 12, 2018). However, jurisdictional discovery is not "a fishing expedition" into the underlying merits. *LaSala v. Marfin Popular Bank Pub. Co.*, 410 F. App'x 474, 478 (3d Cir. 2011). Plaintiff has offered a list of its New Jersey customers while Moiyadi, Ecolink, and Pelissero were associated with NuGenTec, (ECF No. 22 ¶ 5), and argues, with some support, that Defendants targeted these customers to sell their infringing solvent to them. The Court authorizes limited jurisdictional discovery into the extent of Defendants' relationships with these customers.[4]

Therefore, Defendants' motions to dismiss for lack of personal jurisdiction are denied without prejudice. The Court will permit discovery to determine whether personal jurisdiction exists. Because the Court will allow limited jurisdictional discovery to proceed, it declines to reach Ecolink's and Pelissero's requests (ECF No. 19-1) to dismiss for improper venue or transfer the case to another forum pursuant to 28 U.S.C. § 1404(a). Those requests are likewise denied without

---

[4] As explained above, Plaintiff's jurisdictional allegations are weaker with respect to Pelissero than to Ecolink. The Court is mindful that jurisdictional discovery is more burdensome, and therefore potentially less appropriate, when the defendant is an individual. *See Traisman v. Khmelnitsky*, No. 19-11045, 2020 WL 2847751, at *10 (D.N.J. June 1, 2020). However, Pelissero is Ecolink's owner and CEO. (ECF No. 24 at 3 n.4.) Discovery into Ecolink's contacts with Plaintiff's New Jersey customers from 2021 to 2023 is likely to be coextensive with discovery into Pelissero's on the same subject and therefore will militate any undue burden on Pelissero individually.

prejudice. Upon the completion of jurisdictional discovery, Defendants may renew their motions to dismiss for lack of personal jurisdiction or venue, renew their application to transfer under 28 U.S.C. § 1404(a), or file another appropriate motion or responsive pleading.

## IV. CONCLUSION

The Court **DENIES** Defendants' motions to dismiss (ECF Nos. 18, 19) without prejudice, in order for the parties to conduct brief jurisdictional discovery within the boundaries stated above. The parties are instructed to meet and confer regarding the jurisdictional discovery to be conducted and contact the chambers of the Honorable Tonianne J. Bongiovanni within ten days of the date of this decision to set a discovery schedule. Upon the completion of jurisdictional discovery, Defendants may renew an appropriate motion or file a responsive pleading. An order consistent with this memorandum Opinion will be entered.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

Dated: August 7, 2023